THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, | CASE NO. C16-767-JCC |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS |
| v. | |
| JOSEPH C. TAIT, et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiff/Counter-Defendant U.S. Bank National Association's motion to dismiss counterclaims (Dkt. No. 21). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

I.      BACKGROUND

A.      Mediation and Judicial Foreclosure Proceedings

On May 16, 2016, Plaintiff/Counter-Defendant U.S. Bank National Association filed a complaint for judicial foreclosure in King County Superior Court against Defendants/Counter-Plaintiffs Joseph C. Tait, Kazumi G. Tait, Discover Bank, and any other unknown parties in possession or claiming possession. (Dkt. No. 1-7.) The Taits are husband and wife and the record owners of the real property at issue in the foreclosure action. (*Id.* at 2; Dkt. No. 19 at 7.) Discover Bank is a judgment creditor of the Taits and nominal party in this matter. (*See* Dkt. No.

1-7 at 1.)

The dispute centers around a promissory note the Taits executed and delivered to U.S. Bank on December 7, 2004, secured by a deed of trust (Deed) encumbering the property. (*See id.* at 3.) The Taits promised to pay the principal sum of $235,000.00 together with interest thereon at the rate of 5.625% per annum in monthly installments of $1,372.95. (*Id.*) Mortgage Electronic Registration Systems, Inc. (MERS) assigned the Deed to U.S. Bank through a written assignment. (*Id.*) On July 3, 2012, the loan was modified. (*Id.*) The new loan balance was $236,063.66. (Dkt. No. 19 at 10.) The Taits allege U.S. Bank failed to credit the Taits' first payment on their modified note and suspended numerous timely payments beginning in 2012, totaling approximately $11,076.74. (Dkt. No. 19 at 10.) The Taits failed to make their monthly payment due on April 1, 2013, and have not made any payments on the loan since. (Dkt. No. 1-7 at 3.)

In October 2014, the Taits were referred to foreclosure mediation under Washington's Foreclosure Fairness Act (FFA), Wash. Rev. Code. § 61.24.163 *et seq.*, and submitted their first loan modification application to U.S. Bank. (Dkt. No. 19 at 11; Dkt. No. 19-14 at 2.) The Taits allege U.S. Bank delayed providing required mediation documents for months. (Dkt. No. 19 at 12.) On August 7, 2015, U.S. Bank denied the loan modification because "requested documents have yet to be received." (Dkt. No. 19-11 at 3.) The Taits allege they submitted at least two complete loan modification applications. (Dkt. No. 19-15 at 3.)

On September 22, 2015, the parties began a second mediation session. (Dkt. No. 19 at 13.) U.S. Bank denied the Taits' loan modification application for insufficient income on October 23, 2015. (Dkt. No. 19-12 at 3.) However, the Taits allege U.S. Bank acknowledged that it miscalculated the Taits' income and allowed the Taits to resubmit a loan modification application if the Taits agreed to sign a waiver releasing U.S. Bank of any liability. (Dkt. No. 19-14 at 3.) On February 10, 2016, the foreclosure mediator issued a bad faith certification against U.S. Bank indicating U.S. Bank "failed to provide timely and/or accurate documents." (Dkt. No.

1   19 at 14.)

2         As a result of the default originating in April 2013, U.S. Bank exercised its option in the

3   Deed to declare the whole of the balance and the principal in interest thereon due and payable

4   and filed this action in King County Superior Court. (Dkt. No. 1-7 at 4.) U.S. Bank requested a

5   judgment against the Taits or in the event of nonpayment, a judicial foreclosure sale. (*Id.* at 4–5.)

6       **B.**    **The Taits' Counterclaims**

7         On May 25, 2016, the Taits filed a notice of removal (Dkt. No. 1) and filed an answer to

8   the complaint (Dkt. No. 19) on June 24, 2016. In their answer, the Taits also filed counterclaims

9   against U.S. Bank. (*Id.* at 15–31.) The Taits essentially allege U.S. Bank's delay in processing

10  the Taits' loan modification application caused the Taits to owe more than they should on the

11  loan. (*Id.*) The Taits allege eight counterclaims against U.S. Bank in connection with the

12  foreclosure proceedings during mediation: (1) violation of the Washington Consumer Protection

13  Act (CPA); (2) violation of the Truth in Lending Act (TILA); (3) violation of the Real Estate

14  Settlement Procedures Act (RESPA); (4) violation of the Equal Credit Opportunity Act (ECOA);

15  (5) violation of the Fair Housing Act (FHA); (6) violation of their "civil rights" under 42 U.S.C.

16  § 2000d; (7) violation of 42 U.S.C. § 1981; and (8) breach of the implied duty of good faith and

17  fair dealing. (*Id.*) U.S. Bank filed a motion to dismiss the counterclaims for failure to state claims

18  upon which relief can be granted. (Dkt. No. 21.)

19  **II.**    **DISCUSSION**

20      **A.**    **Fed. R. Civ. P. 12(b)(6) Standard**

21        A defendant may move for dismissal when a plaintiff "fails to state a claim upon which

22  relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must

23  contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its

24  face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim has facial plausibility when the

25  plaintiff pleads factual content that allows the court to draw the reasonable inference the

26  defendant is liable for the misconduct alleged. *Id.* at 678. The plaintiff is obligated to provide

1   grounds for his entitlement to relief that amount to more than labels and conclusions or a

2   formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S.

3   544, 545 (2007). "[T]he pleading standard Rule 8 announces does not require 'detailed factual

4   allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

5   accusation." *Iqbal*, 556 U.S. at 678. A dismissal under Fed. R. Civ. P. 12(b)(6) "can [also] be

6   based on the lack of a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,

7   699 (9th Cir. 1988).

8       **B.    Consumer Protection Act Counterclaim**

9           The Taits allege U.S. Bank "violated its duty to mediate in good faith and committed a

10  *per se* violation" of the CPA, Wash Rev. Code § 19.86, *et seq.* (Dkt. No. 19 at 15.) In order to

11  recover under the CPA, a plaintiff must prove "(1) unfair or deceptive act or practice;

12  (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her

13  business or property; (5) [and] causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title

14  Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986) (en banc).

15          U.S. Bank does not dispute, for purposes of its motion to dismiss the counterclaims, that

16  the Taits have provided sufficient allegations on the first three elements of a CPA claim. (Dkt.

17  No. 21 at 5-6.) The Court agrees. However, U.S. Bank argues the Taits have not sufficiently pled

18  the elements of injury or causation. To prove causation, the "plaintiff must establish that, but for

19  the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury."

20  *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 22 (2007). The

21  Taits allege their injury occurred in the form of a "far more expensive mortgage because [U.S.

22  Bank's] delay permitted the loans [*sic*] principle [*sic*] to bloat by operation of the accrual of

23  capitalization of interest, fees, charges, and fines." (Dkt. No. 19 at 16–17.) U.S. Bank argues the

24  Taits' injury was self-inflicted and caused by their default, not U.S. Bank's bad faith during

25  mediation, and therefore causation is not met. (Dkt. No. 21 at 6–7; Dkt. No. 24 at 5–6.) At this

26  stage of the litigation, the Court need not determine which of the parties' allegations are true as

ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION TO DISMISS
COUNTERCLAIMS
PAGE - 4

1   to what caused the Taits' injury of an increased principal. The Court looks only at the face of a

2   complaint to decide a motion to dismiss. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d

3   977, 980 (9th Cir. 2002). The Taits have alleged enough facts to survive a motion to dismiss

4   because they have provided facts to support each element of a CPA claim, including causation

5   and injury. Therefore, U.S. Bank's motion is DENIED as to the CPA counterclaim.

6         **C.**      **Truth in Lending Act Counterclaim**

7         The Taits allege various violations of TILA, 15 U.S.C. § 1601 *et seq.*, including: (1) U.S.

8   Bank misapplying or improperly suspending payments made by the Taits between 2012 and

9   March 2013, (Dkt. No. 19 at 18–19); (2) "U.S. Bank's mute and un-collaborative appearance at

10   foreclosure mediation," (*Id.* at 20–21); and (3) U.S. Bank's failure to give proper notice of the

11   Taits' right to rescind the transaction, (*Id.* at 19–20). The Taits seek damages and rescission of

12   the contract.

13              **1.**      **Improperly Suspended Payments and Mediation Proceedings**

14         U.S. Bank argues the Taits' first two TILA violations are outside the statute of

15   limitations, and in the alternative, fail to state a claim on which relief can be granted. (Dkt. No.

16   21 at 7–8.) Any action for damages under TILA must be brought "within one year from the date

17   of the occurrence of the violation." 15 U.S.C. § 1640(e). Here, the Taits made their last payment

18   in March 2013 (Dkt. No. 1-7 at 3) and began mediation in October 2014 (Dkt. No. 19-14 at 2).

19   However, they did not file these counterclaims until August 2016. Therefore, any damages

20   claims based on alleged misappropriations of the payments or mediation bad faith are time

21   barred.

22         The Taits argue under these circumstances equitable tolling is available because of U.S.

23   Bank's alleged false communications and because the payment application issues were discussed

24   during the foreclosure mediation. (Dkt. No. 23 at 8.) The Taits argue "it would not have made

25   sense, and may have well been deemed bad faith, for the Taits to have initiated litigation" while

26   the parties were still in foreclosure mediation. (*Id.*)  A court will apply equitable tolling to TILA

1    claims for damages "in situations where, despite all due diligence, the party invoking equitable

2    tolling is unable to obtain vital information bearing on the existence of the claim." *Cervantes v.*

3    *Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) (citing *Socop–Gonzalez v.*

4    *I.N.S.*, 272 F.3d 1176, 1193 (9th Cir. 2001)). In general, plaintiffs must allege "circumstances

5    beyond their control" to meet this standard. *Id. See*, *e.g.*, *Hubbard v. Fidelity Fed. Bank*, 91 F.3d

6    75, 79 (9th Cir. 1996) (per curium) (declining to toll TILA statute of limitations when "nothing

7    prevented [the mortgagor] from comparing the loan contract, [the lender's] initial disclosures and

8    TILA's statutory and regulatory requirements").

9         Here, the Taits' argument that the foreclosure mediation prevented them from bringing

10   the damages claims does not meet this high standard because the mediation commenced after the

11   TILA claim was already untimely. Accordingly, the Taits' claims that U.S. Bank violated TILA

12   by misapplying or improperly suspending payments and with mediation bad faith are

13   DISMISSED WITH PREJUDICE.

14                  **2.    Notice of Right to Rescind**

15        U.S. Bank argues the Taits' third TILA violation is also outside the statute of limitations,

16   and in the alternative, fails to state a claim on which relief can be granted. (Dkt. No. 21 at 8.)

17   Normally, a borrower may rescind a loan subject to TILA within three days of the consummation

18   of the transaction. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(a)(3). However, if a lender has failed

19   to provide required notices of a borrower's right to cancel the transaction, the borrower has three

20   years to exercise her right to rescind from the date of the consummation of the transaction.

21   15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3).  Here, the Taits' original loan was consummated

22   in December 2004 and the loan modification was consummated in July 2012. (Dkt. No. 1-7 at 3.)

23   However, they did not file these counterclaims until August 2016. Therefore, the rescission claim

24   is time barred even if U.S. Bank failed to provide notice of the right to cancel.

25        The Taits argue under these circumstances equitable tolling is available for the rescission

26   claim. (Dkt. No. 23 at 8.) The Taits cite *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct.

1   790 (2015), for the proposition that rescission after the three-year statute of limitations period is

2   permitted. However, the Taits blatantly misstate the holding. The Supreme Court in *Jesinoski*

3   addressed the issue of whether a borrower exercises the right to rescind by providing written

4   notice to her lender, or whether a borrower must also file a lawsuit before the three-year period

5   elapses. The Court held that only notice to the lender is required. *Jesinoski*, 135 S. Ct. at 793.

6   Here, the Taits do not allege any facts that they gave U.S. Bank notice of their intent to rescind.

7   Further, the Supreme Court held 15 U.S.C. § 1635(f) "permits no federal right to rescind

8   defensively or *otherwise*, after the 3-year period of § 1635(f) has run." *Beach v. Ocwen Fed.*

9   *Bank*, 523 U.S. 410, 419 (1998). "Section 1635(f) is therefore not merely a statute of

10  limitations—it completely extinguishes the underlying right itself." *McOmie-Gray v. Bank of*

11  *Am. Home Loans*, 667 F.3d 1325, 1329 (9th Cir. 2012). Therefore, the Taits' equitable tolling

12  arguments carry no weight. Accordingly, the Taits' claim that U.S. Bank violated TILA with its

13  failure to give proper notice of the Taits' right to rescind is DISMISSED WITH PREJUDICE.

14          **D.      Real Estate Settlement Procedures Act Counterclaim**

15          The Taits allege various violations of RESPA, 12 U.S.C. § 2601 *et seq.*, including

16  (1) U.S. Bank did not respond to a Qualified Written Request (QWR) for information from the

17  Taits within sixty days and (2) U.S. Bank engaged in a pattern or practice of non-compliance

18  with the requirements of the mortgage servicer provisions, as evidenced by their bad faith

19  certification during mediation. (Dkt. No. 19 at 24.)

20          **1.      Qualified Written Request Response**

21          U.S. Bank argues the QWR response allegation does not state a claim for relief. (Dkt. No.

22  21 at 9.) RESPA requires loan servicers like U.S. Bank to respond to a QWR from a borrower

23  for information within sixty days. 12 U.S.C. § 2605(e)(2)(C). A QWR must be a "written

24  correspondence, other than notice on a payment coupon or other payment medium supplied by

25  the servicer, that—includes . . . the name and account of the borrower" and "a statement of

26  reasons for the belief of the borrower. . . that the account is in error." 12 U.S.C. § (e)(1)(B). The

Taits do not allege any facts that they made a QWR. Instead, the Taits attempt to argue the FFA is the "functional equivalent" of RESPA's Qualified Written Request procedure (Dkt. No. 19 at 24) and comparison of the two "reveals that compliance with one means compliance with the other, and a violation of one is the violation of the other." (Dkt. No. 23 at 11.) Under this analysis, U.S. Bank's alleged failure to provide the documents required under the FFA is a violation of RESPA. The Taits cite no authority where courts have construed the statutes as functional equivalents. Further, the Court finds that a plain language reading of the statutes does not provide such a connection. FFA disclosures are for the purpose of loan modification, not loan servicing like RESPA. Therefore, the Taits' RESPA claim for failure to respond to a QWR is DISMISSED.

### 2. Non-compliance with Mortgage Servicer Provisions

U.S. Bank argues no provision of RESPA has anything to do with foreclosure mediations, and therefore the Taits' claim that U.S. Bank violated RESPA during the foreclosure mediation fails to state a plausible claim for relief. (Dkt. No. 21 at 10.) The Taits argue "U.S. Bank violated RESPA, 12 U.S.C. § 2605(e)(2)(A), by refusing to make appropriate corrections to the Taits' account in response to the requests to do so at the third and last foreclosure mediation." (Dkt. No. 19 at 24.) However, section 2605(e)(2)(A) requires that the borrower make a QWR before any corrections to the account of the borrower can be made. It is undisputed that the Taits never made a QWR. Therefore, the Taits' RESPA claim for non-compliance with mortgage servicer provisions fails to state a plausible claim and is DISMISSED.

### E. Equal Credit Opportunity Act Counterclaim

The Taits allege various violations of ECOA, 15 U.S.C. § 1691 *et seq.*, based on the fact that they applied for a loan modification, were denied the modification, and were therefore entitled to a notification of an adverse action. (Dkt. No. 19 at 25.) They further allege that U.S. Bank's unexplained suspended expenses were effectively adverse actions in that they increased the amount of the unpaid principal balance. (*Id.*)

1    ECOA was enacted to protect credit applicants from discrimination on the basis of race,

2    color, religion, national origin, sex, or age. 15 U.S.C. § 1691(a). Here, the Taits merely state they

3    are members of a protected racial class because Mrs. Tait is Japanese and Mr. Tait is Puerto

4    Rican. (Dkt. No. 19 at 27; Dkt. No. 23 at 18.) These are conclusory statements and insufficient to

5    state a plausible claim of race discrimination because Taits have made no allegations that these

6    alleged adverse actions were grounded in discrimination.

7    Moreover, if an applicant is denied credit, ECOA requires that the creditor provide a

8    statement of reasons for its "adverse action." 15 U.S.C. § 1691(d)(2). An adverse action is

9    defined in part as "a denial or revocation of credit." 15 U.S.C. § 1691(d)(6). However, an

10   adverse action does not include "a refusal to extend additional credit under an existing credit

11   arrangement where the applicant is delinquent or otherwise in default." Id.[1] Here, it is undisputed

12   that when U.S. Bank denied the Taits' loan modification, the Taits were in default and had not

13   made a payment on the loan since March 2013. Therefore, the Taits fail to state a plausible

14   adverse action grounded in discrimination and their ECOA claim is DISMISSED.

15   **F.    Fair Housing Act Counterclaim**

16   The Taits allege U.S. Bank violated FHA because it refused to negotiate in good faith

17   during the foreclosure mediation and the "only real offer U.S. Bank ever made was a take-it-or-

18   leave-it offer which would saddle the Taits with an ambiguously bloated principal . . . and a

19   waiver releasing U.S. Bank from the substantial liability of its unlawful behavior created." (Dkt.

20   No. 19 at 26.) The Taits allege this caused them a loss of rights under "Freddie Mac and the

21

22   [1] In their response to U.S. Bank's motion to dismiss, the Taits claim that a Federal Reserve
     Board opinion letter determined that a home loan modification is in fact a credit application

23   under ECOA. (Dkt. No. 23 at 13.) However, the letter actually states the Making Homes
     Affordable Modification Program "requires an adverse action notice when a creditor declines an

24   application for an extension of credit from a borrower *that is not currently delinquent or in
     default on that loan.*" Federal Reserve Board, Opinion Letter on Mortgage Loan Modifications

25   and Regulation B's Adverse Action Requirement (Dec. 4, 2009), http://www.federalreserve.gov/
     boarddocs/caletters/2009/0913/caltr0913.htm (emphasis added). The Taits again blatantly

26   obfuscate the governing law by citing sources out of context.

1  MHA Program." (*Id.*)

2     FHA, 42 U.S.C. § 3601 *et seq.*, prohibits discrimination by providers of housing on the

3  basis of race, color, religion, sex, national origin, familial status, or disability. The Taits seem to

4  allege a disparate treatment claim. To state a FHA disparate treatment claim, the Taits must

5  allege: (1) they are a member of a protected class; (2) they attempted to engage in a "real estate-

6  related transaction" with U.S. Bank; (3) U.S. Bank refused to transact business with the Taits

7  despite their qualifications; and (4) U.S. Bank transacted business with a similarly situated

8  parties during a period relatively near the time U.S. Bank refused the Taits. *Gamble v. City of*

9  *Escondido*, 104 F.3d 300, 305 (9th Cir. 1997).

10     The Taits argue that *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), which deals with

11  pleading standards for discrimination cases, and *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th

12  Cir. 1997), should guide the Court in its analysis of whether the Taits state a claim upon which

13  relief can be granted. (Dkt. No. 23 at 14–15.) However, these cases were decided years before

14  *Iqbal* and *Twombly* and are entirely inapplicable now. The Supreme Court confirmed that

15  *Swierkiewicz* did not undermine the fact that a complaint must still be plausibly pled. *Twombly*,

16  550 U.S. at 546. Further, at least one post-*Twombly* case interprets *Gilligan* as meaning that the

17  plaintiff need not prove a prima facie case, but must still plead the general elements. *Taylor v.*

18  *Accredited Home Lenders, Inc.*, 580 F. Supp. 2d 1062, 1068 (S.D. Cal. 2008). The Court adopts

19  this holding.

20     Here, the Taits merely state they are members of a protected racial class because Mrs.

21  Tait is Japanese and Mr. Tait is Puerto Rican. (Dkt. No. 19 at 27; Dkt. No. 23 at 18.) There are

22  no allegations U.S. Bank continued to engage in this type of transaction with other parties with

23  similar qualifications. Without more, the Taits fail to state a plausible FHA claim and it is

24  DISMISSED.

25     **G.     Title VI, 42 U.S.C. § 2000d Counterclaim**

26     The Taits allege U.S. Bank "took measures to conceal the real owner and beneficiary

ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION TO DISMISS
COUNTERCLAIMS
PAGE - 10

from the Taits." (Dkt. No. 19 at 27.) The Taits believe there was no assignment from Freddie Mac to U.S. Bank, yet U.S. Bank has held itself out to be the beneficiary. (*Id.*) In connection with this concealment, the Taits allege U.S. Bank "effectively excluded the Taits from participation in, and denied the benefits of their options under" the federal Making Home Affordable Program because of the Taits' race, color, or national origin. (*Id.*)

Title VI of the Civil Rights Act provides that "[n]o person in the United States shall, on ground of race, color, or national origin, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To survive a motion to dismiss, the Taits must allege facts that U.S. Bank is engaging in racial discrimination and U.S. Bank is the recipient of federal funding. *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994), *overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001). A private individual may sue to enforce Title VI only in instances of intentional discrimination. *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001).

The Taits do not allege in their counterclaims that U.S. Bank receives federal funds. Further, the Taits fail to make any allegations that racial bias motivated US Bank's decision to deny their participation in the Making Homes Affordable Program. This is fatal to their Title VI claim. Therefore, the Taits' Title VI claim is DISMISSED.

## H.    42 U.S.C. § 1981 Counterclaim

The Taits allege U.S. Bank "violated its duty to comply with all servicing laws, regulations, and guidelines, thereby eliminating the Taits' ability to enforce the Deed of Trust." (Dkt. No. 19 at 27.)

42 U.S.C. § 1981 prohibits racial discrimination in the formation of contracts solely due to ancestry or ethnic characteristics. *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987). Therefore, a section 1981 claim may be based only on race. *Id.* To sufficiently allege the prima facie case, the Taits must plead facts that plausibly establish U.S. Bank's intentional

discrimination interfered with the Taits' right to contract freely without racial discrimination. *See Gen. Bldg. Contractors Ass'n Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982); 42 U.S.C. § 1981. Here, the Taits merely state they are members of a protected racial class because Mrs. Tait is Japanese and Mr. Tait is Puerto Rican. (Dkt. No. 19 at 27; Dkt. No. 23 at 18.) These again are merely conclusory statements and insufficient to state a plausible claim of intentional race discrimination. Therefore, the Taits' 42 U.S.C. § 1981 claim is DISMISSED.

## I.     Breach of Implied Duty of Good Faith and Fair Dealing Counterclaim

The Taits allege U.S. Bank breached its implied duty of good faith and fair dealing arising from the Note and Deed. (Dkt. No. 19 at 18.) The Taits allege various violations of this duty including (1) the beneficiary declaration signed by U.S. Bank in 2014 is ambiguous and (2) U.S. Bank failed to process the Taits' loan modification request. (Dkt. No. 19 at 29.)

Under Washington law, "[t]here is in every contract an implied duty of good faith and fair dealing" that "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Rekhter v. State, Dep't of Soc. & Health Servs.*, 323 P.3d 1036, 1041 (Wash. 2014) (citing *Badgett v. Sec. State Bank*, 807 P.2d 356 (1991)). It is possible to breach the implied duty of good faith even while fulfilling all of the terms of the written contract. *Id.* However, "the duty [of good faith and fair dealing] arises only in connection with terms agreed to by the parties." *Id.* (citing *Johnson v. Yousoofian*, 930 P.2d 921, 924 (Wash. Ct. App. 1996)). If there is no contractual duty, there is nothing that must be performed in good faith. *Id.*

### 1.   Ambiguous Note

As to the first alleged breach, the Taits cite to paragraph 22 of the Deed as the contract term that was violated. (Dkt. No. 19 at 28–29.) This paragraph states, in relevant part:

> If Lender invokes the power of sale, Lender shall give written notice to the Trustee of the occurrence of an event of default and of the Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require.

(Dkt. No. 1-7 at 23.) The Taits seem to claim that, by failing to mention MERS and Freddie Mac,

the Note is ambiguous and thus in violation of paragraph 22. (Dkt. No. 19 at 29.) However, these facts do not support a plausible claim of a breach because they have nothing to do with paragraph 22's contractual duties.

### 2. Loan Modification

As to the second alleged breach, the Taits cite paragraph 19 of the Deed as the contact term that was violated. (Dkt. No. 19 at 29.) This paragraph deals with the Taits' right to reinstate after acceleration. (Dkt. No. 1-7 at 21.) The paragraph states, in relevant part, if "Borrower meets certain conditions, Borrower shall have a right to have this Security Instrument discontinued." (*Id.*) These conditions include payment of all sums due, cure of all defaults of covenants, and payment of all expenses incurred. (*Id.*) The Taits allege "[b]y never properly processing the Tait's [*sic*] modification application, U.S. Bank blocked the Taits from obtaining the modification that would have cured the default." (Dkt. No. 19 at 29.) However, paragraph 19 does not contain a contractual right to modification. The Taits do not allege any other facts that indicate there is such a right elsewhere in the Deed. Further, even if paragraph 19 applied to this allegation, the Taits allege no facts that they have met the conditions required. Without a contractual right, there is no implied duty of good faith. As such, the Taits do not state a plausible claim on which relief can be granted.

Therefore, the Taits' claim for a breach of the implied duty of good faith and fair dealing is DISMISSED.

### III. CONCLUSION

For the foregoing reasons, U.S. Bank's motion to dismiss counterclaims (Dkt. No. 21) is GRANTED in part and DENIED in part. The only remaining counterclaim is the CPA counterclaim. The TILA claim is DISMISSED WITH PREJUDICE as it is time barred. The other claims, RESPA, ECOA, FHA, Title VI, 42 U.S.C. § 1981, and breach of implied duty of good faith and fair dealing, are DISMISSED.

///

ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION TO DISMISS
COUNTERCLAIMS

1      DATED this 21st day of September 2016.

2

3

4

5

6

7

8                       John C. Coughenour
                         UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION TO DISMISS
COUNTERCLAIMS
PAGE - 14